### 10917

### STATE v. MORRISON

### (118 S. E. 304)

1. HOMICIDE—KILLING OF BAD MAN NOT EXCUSABLE BECAUSE HE WAS BAD.—One has no right to kill another simply because the man killed was a bad man, and it makes no difference how bad a man deceased may have been.

2. HOMICIDE—ONE HAS NO RIGHT TO SEEK PERSON WHO THREATENS HIS LIFE.—Where threats to take the life of accused were communicated to him, it did not give accused the right to seek the one who made the threats, because of such threats.

3. CRIMINAL LAW—BURDEN ON ACCUSED TO SHOW EXCUSE FOR ADMITTED KILLING.—Where accused admitted that he intentionally killed deceased with an instrument calculated to produce death, a prima facie case of felonious homicide was made out, and the burden shifted to defendant to show that it was done under circumstances that the law will excuse.

4. HOMICIDE—FAILURE TO ESTABLISH SELF-DEFENSE BY PREPONDERANCE OF EVIDENCE DOES NOT PRECLUDE CONSIDERATION OF GUILT BEYOND REASONABLE DOUBT.—In a prosecution for murder, while the accused must establish self-defense by the preponderance of the testimony, where he failed to do so the jury could still consider the evidence, and if it produced a reasonable doubt of the guilt of accused they must find him not guilty.

Before GARY, J., and WILSON, J., Abbeville, June, 1921. Affirmed.

J. W. Morrison upon conviction of murder appeals and also appeals from an order refusing a new trial on after discovered evidence. Two appeals heard together.

*Messrs. J. Howard Moore* and *M. L. Bonham,* for appellant, cite: *Charge on facts*: 9 S. C., 844; 85 S. C., 265; 15 S. C., 393; 28 S. C., 225; 47 S. C., 515; 51 S. C., 459. *Charge erroneous in putting burden on defendant*: 104 S. C., 250.

*Mr. H. S. Blackwell, Solicitor,* for respondent.

July 5, 1922.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

Two appeals heard together. The appellant in his argument says:

"As is set forth in the agreed case, the defendant was convicted of murder, with recommendation to mercy, for the killing of his brother, Bazil Morrison. The theory of the State's case according to the evidence produced at the trial is:

"That on an afternoon, late, the defendant got his gun and went out looking for the deceased; went to where the deceased lived, asked for him, and, when told that he was not at home, then went off looking for the deceased, and when he met the deceased in the road shot and killed him; in other words, that the defendant went out that afternoon gunning for the deceased. The testimony produced on behalf of the defendant was to the effect that the deceased was a violent, very bad man; had upon one occasion cut his old father, upon another occasion whipped his brother-in-law, and upon another occasion had badly mistreated his old mother; and further that the deceased harbored malice towards the defendant on account of the way in which their father had disposed of his property by

will, giving the deceased only $60.00 and the defendant a large part of his estate; that on account of this bad feeling that the deceased bore towards the defendant, the deceased upon many occasions had threatened the life of the defendant; that these threats were communicated to the defendant; that even the mother of both the deceased and the defendant lived in fear of the deceased; and that she was uneasy all the time that the deceased would kill the defendant. The defendant testified that he shot the deceased in self-defense; that there was sufficient provocation to lead him to believe that his life was in danger when he shot; that just before he shot the deceased cursed him, advanced rapidly towards him, saying that he was going to kill the defendant, threw his hand to his hip pocket, and then the defendant shot. The defendant did not leave home expecting to see the deceased, but, when he ran upon him unexpectedly, the deceased began to curse him, threatened to kill him, advanced towards him with his hand in his hip pocket, and, knowing the violent type of man the deceased was, the defendant thought his life was in danger, and he shot in self-defense. The defendant interposed the plea of self-defense and, even though he had failed to make out this plea, he had the legal right upon provocation to reduce the killing from murder to manslaughter. In the light of the testimony as set forth hereinabove, and as agreed upon in the 'case,' we submit that the instruction as set forth in Exceptions 1, 2, 3, and 5, were erroneous and prejudicial to the rights of the defendant.

"Exception 1 imputes error in the presiding Judge in charging: 'Because one is a bad man, that does not give another the right to kill him.' The testimony on the part of the defendant was to the effect that the deceased was a bad man. This part of the charge was error, as it was a charge upon the facts, in violation of the provision of the State Constitution forbidding Judges to charge upon

the fact in any case, and likewise exception 2 imputes error in the Judge's charge: 'It was not that he was a hell-directed bad man.' The evidence offered at the trial on behalf of the defendant was to the effect that the deceased was a very bad man, and therefore this section of the charge was erroneous and prejudicial to the defendant."

I. His Honor simply told the jury that a man has no right to kill another simply because the man killed is a bad man, and it makes no difference how bad a man deceased may have been. That is a proposition of law, and not of fact: There was no error here.

II. It was not error of law, or a charge on the facts, when his Honor charged the jury:

"It does not give one the right to go out and seek the one who made threats to kill, because he threatened him."

III. The same thing is true as to the charge:

"It does not give one the right to go out and seek the one who made the threats to kill him, because he threatened him."

IV. It is this:

"That when one makes threats to take the life of another, and those threats are communicated to that person, that does not give that person the right to go gunning for him."

This also is a correct statement of law, and not a statement of fact.

V. The sixth exception imputes error to the presiding Judge in charging the following:

"In this case the defendant, as I understand it, admits that he intentionally took the life of the deceased with an instrument calculated to produce death. Now, when that appears, and nothing more appears, then the

burden shifts; the State has made out a prima facie case of felonious homicide; the burden is then shifted to the defendant to show that it was done under circumstances that the law will excuse."

His Honor further charged the jury that, while the defendant must make out his plea of self-defense by the preponderance of the testimony, and if he failed to so make it out, still they could consider the evidence, and if it produced a reasonable doubt of the guilt of the defendant they must find the defendant not guilty. There was no error here.

VI. The defendant made a motion for a new trial on after-discovered evidence. The new trial was properly refused.

The judgment is affirmed.